Evgeny Parkman from the Office of the Federal Public Defender for the Appellant Willie Williams. I'd like to reserve two minutes for rebuttal and I'll keep an eye on the clock, Your Honor. I plan to start with the impoundment of Mr. Williams' car without probable cause of violation. If circumstances permit, I'll also address   without probable cause of violation. unlawful prolongation that occurred earlier in the encounter, and Officer Roach shaking a pill bottle to determine what kind of pills it has in it during an inventory search that's supposed to be limited to securing valuables and protecting the police from false claims and dangerous objects. I've briefed additional issues and if the Court has any questions, I'm happy to answer questions about those as well. I'll begin with the impoundment. The dispositive legal question here is straightforward. It's whether police officers who want to tow away a person's car under California Vehicle Code 22651.01a, b, or c, which authorizes impoundments when the registration is more than six months expired or when the credentials are switched or forged, whether officers need reasonable suspicion of that condition or if they need probable cause. And the answer is dictated by the text of the Fourth Amendment, which sets the default standard for seizures of property at probable cause. And the United States Supreme Court in United States v. Place reiterated that for government agents to seize property, they need, in the usual case, probable cause. What that means is if government agents want to take away someone's car, they need to have a legitimate reason, whether that be a criminal investigation, community caretaking, or something else. And they need at least probable cause that that reason, that condition actually exists and applies to the facts before them. And so police officers can't take off their police hat, put on a community caretaking hat, and suddenly have expanded authority to take away people's cars based on just reasonable suspicion of a registration violation. And if the government asserts that a different standard, that that default applies in a particular case, then what the Court does is balances the individual interests and the government interests to determine whether there's a different standard that should apply. And in this case, I don't think anyone would dispute that the driver of a car... Can I ask you a question? Yes, ma'am. The briefs seem to dispute whether at the time of the officer's inquiries about consent to search and marijuana, whether Officer Roche was waiting on Sergeant Conway for any additional information about the car. So can we go back and talk about the body cam videos? Would you agree that during the time relevant to your prolongation issue, Sergeant Conway radioed Officer Roche once when he confirmed that the car's VIN came back to a release of liability to Mr. Williams? Yes, he did. Okay. And would you agree that during that conversation there was never any indication that Sergeant Conway was going to convey any additional information to Officer Roche? That's exactly right, Your Honor. Is there any other evidence in the record that Officer Roche was waiting on any additional information from Sergeant Conway? Not that I'm aware of, Your Honor. Well, Counsel, when Roche and Conway spoke immediately afterwards, didn't Conway convey that he was doing further investigation? No, Your Honor. So what happened is before that, the dispatcher had given some information to Officer Roche, and Officer Roche said, but no RO information, meaning no registered owner information. And at that point, as it seems from the record, Sergeant Conway jumped in and looked for what is the registered owner information, and he called back to respond that release of liability comes back to Willie Williams, meaning that Willie Williams is the registered owner. So at that point, the officers had no further queries out to dispatch to Sergeant Conway, to anyone else. They had no idea what he was doing, and he didn't have the documents from the scene. So they had no inquiries out to Sergeant Conway at that point, and were not waiting for him to respond. But I thought, didn't he say something, I did do some investigation, and as soon as that conversation, after the consent and marijuana question? Sergeant Conway or Officer Roche? Conway. So Sergeant Conway did not testify at the hearing. From his declaration, he didn't specify about what time he did any type of investigation. His declaration is about what he did once he heard traffic on the radio about what is going on.  So he... So I had to do a little investigation on my own. Hope you don't mind. Roche says, no, no, no, that's a huge help to us. That's on the video. That's true. Right. But the officers were not aware that he was doing additional investigation. Does that matter? Isn't it an objective standard? It's not about subjective knowledge? So we're talking about prolongation. Yeah. And so if Sergeant Conway is not on the scene, he is not doing this traffic stop. Additionally... He's their supervisor, right? He is over at the station. I think by virtue of being a sergeant, he's a supervisor of police officers. But the officers are not waiting on him. They are not considering... Isn't it also true that Sergeant Conway only comes with the temporary license plate issue after he's had the conversation with Roche about the marijuana? That's exactly right, Your Honor. Roche specifically is asking him... He's trying to put his body cam on mute. It's not working. And he says, if someone has marijuana in the car and it's not burnt, but it's like... What do they call it? Before it's ground up or whatever. And he's asking him, well, what do I do? Can you help us out? And then after that, later, is when Conway comes back and says... And that's after all this other stuff has happened. After Mullins had really already... After they found that the car was released to Willie Williams and Mullins is starting to wrap things up and says, okay, then we're just going to give you... And then that's when Roche interrupts and says, wait, wait, wait. You have marijuana in the car. The pot, no nothing. After the consent search, the consent was not obtained for the search. That's exactly right, Your Honor. The officers prolonged the stop. They initially deviate from the mission to ask about marijuana, to ask about consent to search. That has nothing to do with the purposes of the stop, which was the brake lights, which was potentially the registration. And once they deviate and they find... So can I ask why asking consent to search isn't part of the investigation? Yes, Your Honor. It is not part of the mission of the stop when the stop is about a license plate issue and about a brake light issue. Wasn't the stop about the brake lights? The brake lights. Well, there's a brake light and the license plate issue. Initially, the officers testified they stopped based on the brake light. Then there was a license plate issue. There was a — there wasn't a license plate issue, per se. There was no return on the license plate. Mr. Williams did provide them his registration, so... Let me ask you a question. If we find that the officers prolonged the stop here, should we remand on the issue of for the district court to determine in the first instance an independent reasonable — whether there was an independent reasonable suspicion because the district court didn't address that issue? No, Your Honor. Under Rule 12, the government was obligated to make that claim. And under United States v. Guerrero, if they didn't make that claim in a timely fashion, which is here very clearly they did not argue there was independent reasonable suspicion, then they cannot have an opportunity to do it untimely. And there's nothing preventing them from making that claim. Officer Roach had written in his police report that that was something that he was considering. Can I ask one last question? Yes, of course, Your Honor. It's a hot bunch today. Would you agree that safety is always a mission when officers conduct a stop like that? I would agree that officers need to be aware of their safety. And safety of the roads, I'm saying. Isn't that the whole purpose of these traffic stops is safety on the roads? Yes, Your Honor. So I'm just wondering why is not asking for marijuana part of that mission of safety? So officers can't. I mean, Rodriguez says very clearly that the mission of the stop, unless they have independent reasonable suspicion about marijuana, is limited to what the cause of the stop was. Right, which is the mission is ensuring safety on the roads. Well, I guess in this case the mission of the stop, the safety part of it, is that there's no taillights.  So they are allowed to investigate other safety issues when that's a safety issue? No. This Court has clearly said that unless there's independent reasonable suspicion to investigate additional issues. So if officer road — I'm just wondering, isn't safety the mission of the stop? Not as broadly as the Court is asking about it. There has to be — if, for example, the officer had suspicion that Mr. Williams was driving unsafely because he may be under the influence of marijuana, if there's reasonable suspicion of that, certainly the officer can ask, but not absent that reasonable suspicion. And I'll reserve the remainder. Yeah. Thank you, Your Honor. I mean, yeah. Good morning, Your Honor, and may it please the Court. Ross Mazur on behalf of the United States. Let me turn first to the prolongation issue that my colleague was discussing. And the defense prolongation claim fails for three independent reasons. First is that the two challenged questions were either part of the mission of the stop or supported by independent reasonable suspicion. Second, that even if they were not part of the mission of the stop, they didn't add any extra time. And third, even if they were not part of the mission and added extra time, they're not fruit of the poisonous tree. So I'll start with the second basis, that they didn't add any extra time because there were a lot of questions about the chronology of the stop. So, of course, one purpose of the stop was to investigate the registration issue. And Sergeant Conway was doing that in parallel to the questioning at the scene. The chronology makes this clear. Officer Roche testified that before he called Sergeant Conway about the marijuana and registration issue, Sergeant Conway had already radioed him saying that he, Conway, was looking into the registration issue. And that's at 3 ER 303 where that testimony occurs. And the body cam video confirms it. This is Roche's body cam that we refer to in the briefs as Exhibit A. Does it matter that the officers on scene didn't know that Conway was doing this individual investigation? They did know. That was part of Officer Roche's testimony at 3 ER 303, which Judge Breyer found entirely credible. And the body cam video confirms that testimony. But Officer Conway concludes the registration research with, okay, the VIN comes back to a release liability to a Willie Williams. So the registration at that point was concluded. San Francisco Police Department's policy is that a towed car cannot be released without valid registration. So the fact that the towed car was released to Willie Williams shows that the registration question was closed. That's why then Roche tells Mullins, consent or any marijuana. At that point they know that SFPD would not release that car to Willie Williams unless it was registered to him. If I understand Your Honor's question, I think you're asking about two different points. So let me try to address them in turn. First, Officer Roche knew that Sergeant Conway was still looking into the registration issue. That is part of his testimony at the page I cited, and it's confirmed by the body cam video. We see that from five minutes to about five minutes. Right, but you said that it's at three minutes, right? But then between 5.01 and 5.26 is when Conway comes back and says the VIN comes back to Willie Williams. Yes. Right. Okay, so then at 5.34, 5.38 is when Roche tells Mullins, consent or marijuana. Yes. Then 5.55 to 6.05, Mullins asks Williams, do you mind if we search the car? Williams declines. Then 6.05 to 6.07, Mullins wraps up the stop by saying, hey, then we're just going to give you, and then Roche walks back, interrupts Mullins and says, hey, you don't have any marijuana in the car or anything, do you? No, no pot or nothing? That's at 6.07 to 6.14, correct? And then at 7.20 to 9.00, well, okay, Roche then at 6.35, 6.37 says, okay, stand by real quick, and says he's going to do a tactical real quick. Then he calls Conway and says, hey, Sarge, how's it going? And then he asks them, I've got a quick question for you. Turning off his body cam is not working for some reason. If someone has marijuana in the car, it's not burnt, but it's like, what do they call it, you know, before they grind it up or whatever, right? Yes, I agree with everything in your timeline, Judge Koh, except for one point. Okay. You said that if from – I'm sorry. You said from five minutes to about 5.25, Sergeant Conway comes on and talks about the search of the VIN and that that ended the investigation into the VIN. So from Officer Roche's – you know, the body cam video and the audio may not be entirely clear, but what we know is from Officer Roche's perspective, it did not end the investigation because he testified at the suppression hearing, and this is at 3 ER 303, that by the time he made that second call to Sergeant Conway in which he asked about the marijuana, he knew that Sergeant Conway had already found some information based on the search of the VIN and that he was still looking into the registration issue. Just so I'll be clear, you're referring to the question – so you knew before you called Sergeant Conway that Sergeant Conway was looking into this issue and that he had found additional information. The answer, yes, I did. So that second call that's referred to is – sorry. The call to Sergeant Conway is the one where they discussed the marijuana. The second call at around 730 into the video, yes. There's also testimony at ER 262, by the way, consent has nothing to do with a bad registration, does it? Giving you consent had nothing to do with your record search. The request for consent had nothing to do with your record search, did it? Answer, no. Question, and marijuana investigation had nothing to do with your records check. Answer, no. There's also testimony – question, you would have liked to get inside that car because you suspected it was involved with drug dealing, right? Answer, yes. Question, so there are different ways that you can get inside a car. You get inside a car, for example, if somebody gives you consent to do that, right? Answer, yes. There's also testimony about – he says, I asked him questions about the marijuana. Question, sure, you didn't say, hey, Sergeant Conway, I've got a screwed up DMV record here that I sure would like to have you help me figure it out. Or you didn't say, everything checks out, everything in this car down to a T, everything checks out, it's just that I'm not sure what that no records means. Can you help me with that? You never said that to him once, do you? Answer, at first, no, I do not ask him about it. Question, and so is it fair to say, is it not, that you called him to have him help you conduct the search? Answer, I called him to ask him about marijuana and to see if it was a proper way to conduct or in order to do a search. Question, because you wanted to search that drug dealer's car, didn't you? Answer, yes. Yeah, absolutely, Your Honor. Sergeant, excuse me, Officer Roche testified very honestly that he wanted to search the car because he thought it contained evidence of drugs, but that he would not have done it unless he was convinced that there was a violation that warranted impoundment under California law. Sergeant Conway, who arrived at the scene, signed off on the impoundment for the exact same reason and Judge Breyer, who heard this testimony over a two-day suppression hearing, found Officer Roche's explanation kind of dual motives. Let me ask you a question. You said at the beginning that on the prolongation issue, there are two arguments that you're making. One is that it is part of the overall, the questions were part of the overall mission, and the second is that there was independent reasonable suspicion. What was the independent reasonable suspicion? Sure, there's also a third argument about causation, but starting with the independent reasonable suspicion, before the officers even stopped the car, they knew that its brake lights weren't functioning and that the 954 plate didn't have any returns in the DMV database, a result so unusual that Officer Roche had never encountered it before, which, again, Judge Breyer tested, accredited, excuse me. Once this stop occurred, there were additional factors that the officers saw, namely that they recognized the defendant and his car. The defendant, as being a suspected drug dealer, based two blocks from the location of the stop. What authority establishes that being seen in a high-crime area or having an association with drug dealers or criminals establishes reasonable suspicion? So I think that I agree with Your Honor that just an association with a drug dealer would not establish reasonable suspicion. And you agree with me because if that were to be the case, then it essentially would annihilate the requirement for reasonable suspicion. You'd always have reasonable suspicion to make these inquiries into search, right? Yeah, in those cases, I agree. A single association is not enough. But the record shows more than that. Both at the suppression hearing and in his declaration, Officer Rocha explains some of the bases for his suspicion that the defendant was a drug dealer based on that 200 block of Golden Gate Avenue, just two blocks from the location of the stop. So are you proposing a different rule? Like if you have an association with two people, that that's enough? One may not be enough, but two is enough. If you're in a neighborhood but you're close to the line, that's enough. I don't understand how any of these things, either singularly or collectively, can and I'd like to know what authority you have to suggest that that somehow amounts to sufficient independent reasonable suspicion. Sure. So let me start with the facts. Officer Rocha said that he had seen the defendant associating with a lot, a lot of known drug dealers and people arrested for firearm violations and seen his Mercedes often parked on the 200 block of the Golden Gate Avenue, which was not just in the Tenderloin but an especially high crime section of the Tenderloin known for drug sales and shootings, among other firearm violations. And we do cite a number of cases in our briefs saying that an officer's familiarity with the defendant's finding of probable cause or reasonable suspicion. Of course, the officers notice during the stop that the hood of the car is also riddled with bullets, and the defendant tells them that he was involved in a recent drive-by shooting, which would tend to support the officer's suspicion. I think you're out of time, but I do want to ask you the same question that I asked your friend on the other side, which is if we were to find that the officers did, in fact, prolong the stop here, should we remand on the issue of independent reasonable suspicion? I think the court could certainly do that. You know, the district court said that the officers didn't unreasonably prolong the stop because they were investigating the brake lights and the license plates. But if the court were to disagree with that, then I think, you know, a remand for additional fact-finding would be appropriate. The district court said that it might want to amend its order in the event of an appeal. So the government would not oppose that in that case. And if I may continue for just 10 more seconds. I had a quick question. Can you explain why the consent to marijuana is part of the mission? The consent to marijuana? Yeah, consent to marijuana. How is that question part of the mission? Because once the mission of the stop expanded to include the officer's familiarity with the defendant and specifically that he was a suspected drug dealer in the Tenderloin, a question about drugs in his car was just tailored to that additional suspicion. So you're saying that the mission was investigating drug trafficking and drug dealing, correct? Not at the time of the stop, but the independent reasonable suspicion. Which is that he's on the 200 block of Golden Gate Avenue. Yeah, and the record that I went into. Okay. So you're not saying that the consent request and marijuana possession inquiries were incident to a traffic stop. This was a separate investigation into drug trafficking. The question about marijuana is not part of a routine traffic stop. Okay. In your brief, you seem to suggest that the mission was investigating that the car had possibly been stolen. I don't see in your brief you saying, no, the mission was a drug trafficking investigation. No, we do argue that the independent reasonable suspicion was possession of controlled substances or an illegal firearm based on the officer's familiarity with the defendant. It's true that initially, before they conducted the stop, the fact that the DMV didn't have any returns on the 954 license plate raised an initial suspicion that the car had been stolen. If I may have 10 more seconds. Go ahead. Thank you, Your Honor. And I just want to do so, of course, our second argument, and I think the chronology supports us on this, is that it didn't add any time to the stop. But the third argument is that it's not fruit of the poisonous tree. And it's on this argument that it's really easiest to resolve the prolongation question. The defendant denied consent to search, and the officers immediately abandoned any investigation into marijuana. So the alleged violation, the allegedly improper questions, did not in any sense lead to the subsequent discovery of evidence. Now, the defense only response to this, which is in page 301 of the reply brief, is that the government waived the causation issue. But as we show on pages 24 to 26 of our answering brief, the defendant has the initial burden to show but-for causation, that minimal but-for standard, before the ultimate burden of persuasion shifts to the government to show lack of taint. And the government can't be precluded, even on appeal, from arguing that the defendant did not meet his burden. The two cases that the defendant cites in support of the waiver argument, Dunaway and Twilley, are in opposite because they involve the defendant's statement, a confession or a consent to search. And in that type of case, it's true the initial burden is not on the defendant because the government has to show voluntariness. It's the cases on answering brief 24 to 26 that control. Okay. Thank you very much, counsel. Thank you, Your Honor. Can I ask a quick question? At what point does the investigation turn from a brake lights to a drug dealing investigation? At what point? I would say- Because all of the information that you raise are everything that the officer had before he made the stop, right? That Williams and his car were multiple times near the 200 block of Golden Gate. It's a high crime area. They had observed him associating with a known drug dealer and a person arrested for a firearm offense. Williams was only two to three blocks from the 200 block at that time. So they must have had all of that, what you believe, is independent reasonable suspicion before they stopped him, correct? They didn't recognize Williams or the car before the stop. That came after the stop. But the rest of the information they had before. Okay. Thank you. Thank you. Thank you, Your Honor. Counsel. Your Honors, I'd like to make three brief points. The first is that ER-303 does not say what the government wants it to say. All that Officer Roach is saying is that he was aware that Sergeant Conway had looked at that particular situation, meaning that he had looked up who is the registered owner. And any other interpretation is contradicted by the video evidence, because when he found out from Sergeant Conway, when Sergeant Conway brought up the registration issue, Officer Roach reacted with incredulity. He said, but the car has registration stickers here. So that contradicts the notion that ER-303 is talking about Officer Roach being aware that Sergeant Conway is doing additional research into the registration issue. And Judge Breyer did not make the finding that that's what was going on here and that's what Officer Roach was saying. So what is your interpretation of that statement? So before you called Sergeant Conway, you knew that Sergeant Conway was looking into this issue and that he had found additional information. Right. And that's the additional information that Mr. Williams is the registered owner of the car. So that's the information that he knew he had found. And so he knew — basically, he wasn't just calling Sergeant Conway out of the blue. He knew that Sergeant Conway had called, had said something about the stop, and he was aware of that information. But he was not aware that Sergeant Conway is doing additional investigation into the car's registration. And ER-303 simply doesn't say that because — So what is he looking into? What's this issue that he's looking into there? He had been looking into the registration of the car and he had found out that Willie Williams was the registered owner. But it says before you called Sergeant Conway. Right. So before you knew he was — he had been — what does it say? So before you called Sergeant Conway — sorry. So you knew before you called Sergeant Conway that Sergeant Conway was looking into this issue. And that he had found additional information. Yeah. So you knew before you made the call about the marijuana and — He had been looking into the registration issue, and he had found out that Willie Williams was the registered owner. So that's all he's getting across. He's not getting across that also I was waiting for Sergeant Conway to tell me more information about the registration because as far as he was concerned, he knew that the registration was current because he had seen the stickers. That's the proper way to read that sentence. It says looking into this issue. That's present tense. So you knew before you — What you're saying would be more accurate if it said looked into this issue and had found, you know. But it says looking, which is present tense. I'll also add that the chronology then doesn't add up because when he — Well, I understand the Court's point. I think in speaking it's a broad kind of — You knew that he was involved — He knew that he had looked at this in the general sense. And I think that the video contradicts the interpretation that the government puts forth. And so the other point I want to say is that remand is inappropriate because also the government, other than the Rule 12, the government also waived this particular ground by when it knew that it existed and didn't so intentionally relinquish it. And there are other reasons that the stop was unconstitutional. So remand would be futile in light of those other reasons that the evidence was fruit of poisonous tree. And the last point that I want to make is that the officers did not immediately abandon the marijuana investigation. They had called Sergeant Conway about it, which shows that it was the fruit of that investigation. That I ask the Court to reverse. Thank you. Thank you, Counsel. This case is submitted.
judges: BUMATAY, KOH, DESAI